IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

JESSIE JAMES RICHMOND,          ) Civil Action No. 4:04-01417-HFF-TER
                                          )
       Plaintiff                  )
                                          )
       v.                      )
                                          ) REPORT AND RECOMMENDATION
LIFUERTES ROSARIO, NFN SERANNA,  )
DOCTOR AT FCI-EDGEFIELD;        )
NFN GUEVARA, ADMINISTRATOR; AND  )
J. MATTSON,                )
                                          )
       Defendants.            )
_____)

## I. PROCEDURAL BACKGROUND

The plaintiff, Jessie James Richmond, ("plaintiff" or "Richmond") filed this action *pro se*

on May 26, 2004, under 42 U.S.C. § 1983[1]. The plaintiff is an inmate presently incarcerated at the

Federal Correctional Institution (FCI), in Marianna, Florida. Plaintiff was incarcerated at the FCI,

Edgefield, South Carolina during the time of the complaints alleged in this action. The plaintiff has

filed this lawsuit, pursuant to 42 U.S.C. § 1983, asserting that his constitutional rights were violated

in that the defendants were deliberately indifferent to his medical needs.

Defendants filed a motion to dismiss, or in the alternative a motion for summary judgment

on November 17, 2004. Because the plaintiff is proceeding *pro se*, he was then advised on

November 24, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Court.

to respond to defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint. Plaintiff filed a response in opposition on December 15, 2004.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

Plaintiff states on the first page of his complaint that this is a "Medical Malpractice" action. (Complaint). Plaintiff names Luisa Fuertes-Rosario, Health Services Administrator (HSA) at FCI Edgefield, Dr. Jose Serrano, Clinical Director at FCI Edgefield, Lorenzo Guevara, Assistant Health Services Administrator at FCI Edgefield, and June Mattson, Medical Records Administrator at FCI Edgefield, as Defendants. (Defendants' memorandum p. 2). The plaintiff alleges in his complaint that his constitutional rights were violated by defendants. Plaintiff alleges that he is bringing suit against Defendant Fuertes-Rosarioa, as the HSA, because she is responsible for all medical staff at FCI Edgefield. Plaintiff alleges that the medical staff did not provide his "real" medical record to the consultant specialist that he was sent to and, therefore, the specialist was not able to properly assess his medical complaints. As a result of not having the correct medical records, plaintiff alleges that he endured a painful medical procedure which had already been performed on him while at another institution in Alabama.  Further, as to defendant Fuertes-Rosario, plaintiff alleges that she refused to give him the medication prescribed by the specialist and denied him a special diet that he needed for medical reasons.

Plaintiff alleges that defendants, Guevara and Mattson, denied him medical treatment after he signed up for sick call on several occasions because they are prejudiced toward him. Plaintiff alleges that on one occasion, defendant Mattson locked the doors to the Health Services Department

early which caused him to miss his sick call appointment.

Plaintiff alleges that defendant Serrano prescribed him the wrong medication which put his life in danger because he could have overdosed on the wrong medication. Plaintiff alleges that defendant Serrano should have called the Specialist who he had been seeing to tell him the side effects plaintiff was having with the medication so the Specialist could prescribe another medication for him. Further, plaintiff alleges that on October 3, 2003, defendant Serrano ordered an EKG on him but the medical staff did not schedule the EKG until plaintiff inquired about it. Thus, plaintiff alleges that his EKG was not scheduled until November 6, 2003, and he could have lost his life if the EKG had not been performed.

Plaintiff seeks $100,000.00 for compensatory damages; $300,000.00 in exemplary damages in defendants' individual capacities; $800,000.00 for mental anguish; $50,000.00 for "discomfort and vexation" caused by each defendant; $20,000,000.00 for punitive damages; and, an award for costs and attorney fees.

## B.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleading is appropriate.  Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed. R. Civ. P.

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. While the court is to afford liberal consideration to a complaint filed by a pro se plaintiff, it is not required to ignore a clear failure of proof with respect to any question of fact. To the contrary, " 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am. , 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to

4

demonstrate the existence of a genuine and material factual issue for trial.  <u>Baber</u>, citing <u>Celotex</u>

<u>Corp.</u>, <u>supra</u>.  Moreover, the non-movant's proof must meet "the substantive evidentiary standard of

proof that would apply at a trial on the merits." <u>Mitchell v. Data General Corporation</u>, 12 F.3d 1310,

1316 (4th Cir. 1993) and <u>DeLeon v. St. Joseph Hospital, Inc.</u>, 871 F.2d 1229, 1233 (4th Cir. 1989),

n.7.  Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment.

<u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987), and <u>Evans v. Technologies</u>

<u>Applications & Services Co.</u>, 875 F. Supp. 1115 (D.Md. 1995).


## C. EXHAUSTION

Defendants allege that plaintiff has failed to exhaust his administrative remedies as  to

defendant Fuertes-Rosario. Defendants assert that plaintiff filed an administrative remedy on

February 26, 2003, regarding medical staff being deliberately indifferent to his medical needs, i.e.,

defendant Fuertes-Rosario denying him a special diet for medical reasons and appropriate care for

chronic abdominal problems. Defendants state that the Warden denied the administrative remedy on

April 9, 2003, and plaintiff appealed the decision to the Regional Director on April 16, 2003.

Defendants assert that on May 21, 2003, the Regional Director found after a through investigation

of his complaint that his allegations of delay in medical treatment were unfounded. Defendants assert

that a review of SENTRY does not indicate that plaintiff even attempted to appeal the Regional

Director's decision. (Declaration of Tami Rippon). Further, defendants argue that plaintiff has not

filed any administrative remedies alleging defendant Fuertes-Rosario overruled the medication

ordered for him by the Specialist or tampered with the medical prescription he was given.

Furthermore, defendants argue that plaintiff has not filed any administrative remedies alleging

defendant Serrano prescribed him the wrong medication and ordered an EKG that was not done in a timely fashion, both of which put his life in danger because he could have overdosed on the wrong medication or died before he had the EKG. As to the remaining allegations in plaintiff's complaint against defendants Guevara and Mattson, defendants admit that plaintiff has exhausted these issues as well as the allegation that the medical staff withheld his medical records from the consultant Specialist which resulted in plaintiff having an unnecessary gastric procedure.

In enacting the Prison Litigation Reform Act of 1996 (the PLRA), Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions[2] under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to plaintiff).

---

[2] The PLRA does not define the term "prison conditions" for use in § 1997e; however, the United States Supreme Court has held that, "[e]xhaustion of administrative remedies, pursuant to Prison Litigation Reform Act (PLRA), is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes, and whether they allege Eighth Amendment violation based on use of excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The undersigned concludes that plaintiff has exhausted his administrative remedies. The undersigned finds the standard utilized by the Eleventh Circuit Court of Appeals in Brown v. Sikes, 212 F.3d 1205, 1207-1208 (11th Cir. 2000), to be the proper standard for review of exhaustion of administrative remedies. In Brown, the Eleventh Circuit did not find that the exhaustion requirement automatically prohibits a prisoner from suing any defendant other than those named in the administrative grievance filed by the prisoner. Rather, the Court found that 42 U.S.C. § 1997e(a) requires only that a prisoner provide as much relevant information as he reasonably can in the administrative process.  "[I]mplicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses. But a prisoner cannot provide that which he does not have; he cannot identify those whose identities are unknown to him." Brown, 212 F.3d at 1207-1208. The Eleventh Circuit further found that it is not required that a prisoner name individuals such as a warden in a grievance "simply because they are the top officials in charge of the prison. . . what § 1997(e) requires, and all that it requires, is that the prisoner provide during the grievance process all of the information concerning his claims that he has or reasonably could obtain." Id. at pp. 1209-1210.

In this case, plaintiff filed a grievance against the medical staff alleging medical indifference. (See defendants' memorandum p. 27). Plaintiff appealed the Warden's decision to the Regional Director who rendered a decision finding the allegations unfounded. Therefore, in the light most favorable to the plaintiff, the undersigned finds that defendants' motion for summary judgment on the issue of exhaustion should be denied.

7

## D. MEDICAL INDIFFERENCE

As previously stated, plaintiff alleges that defendants failed to send his correct medical records to the Specialist, delayed ordering his EKG, and failed to give him the prescriptions as ordered by the Specialist. As a result plaintiff alleges negligence, malpractice and medical indifference to his needs. Plaintiff states that he is bringing these claims as a <u>Bivens</u> action and is suing the defendants individually.

Suits against federal officials may not be brought under § 1983. <u>District of Columbia v. Carter</u>, 409 U.S. 418, 424-25 (1973). Federal courts have power under 28 U.S.C. § 1331 (1994) to award damages occasioned by infringements by federal officials of constitutionally protected interests. <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971); see <u>Radin v. United States</u>, 699 F.2d 681, 684 (4th Cir. 1983) (<u>Bivens</u> recognized an action against federal officers sued in individual capacities, but not against the United States). Plaintiff's <u>Bivens</u> action cannot lie against the United States nor against the individual defendants in their official capacities. *See* <u>United States v. Mitchell,</u> 463 U.S. 206, 212 (1983) (the United States cannot be sued without its express consent .); <u>Radin v. United States,</u> 699 F.2d 681, 685 (4th Cir.1983); <u>Keene Corp. v. United States,</u> 700 F.2d 836, 845 n. 13 (2d Cir.1983) (*Bivens* does not allow for recovery of money damages, or suits in general, against the government itself.). Thus, to the extent defendants are being sued under <u>Bivens</u> in their official capacities, the claims are barred by the doctrine of sovereign immunity. Sovereign immunity does not bar damage actions against federal officials in their individual capacities for violation of an individual's constitutional rights. <u>Gilbert v. Da Grossa,</u> 756 F.2d 1455, 1459 (citing <u>Davis v. Passman,</u> 442 U.S. 228(1979); <u>Bivens</u>, <u>supra</u>. Thus, to the extent defendants are being sued in their individual capacities under <u>Bivens</u>, plaintiff's claims are not barred

8

by the doctrine of sovereign immunity.

Defendants assert that plaintiff's medical records reveal that during his intake medical screening, plaintiff informed the medial staff that he had a hiatal hernia and Hepatitis C. He was then placed in the Chronic Care Clinic (Gastrointestinal and Infectious) to be examined by the staff physician or Clinical Director quarterly to monitor and treat his ongoing symptoms associated with his GERD and Hepatitis C. Defendants assert that as of September 29, 2004, plaintiff had been seen at least 80 times by medical staff, contract specialists, or his medical files reviewed by medical staff since he arrived at FCI Edgefield on October 25, 2001. Further, defendants assert that plaintiff was seen approximately 53 times by FCI medical staff or contract specialists in regards to his ongoing symptoms related to his GERD such as constipation, abdominal pain, indigestion, and having acid reflux. Defendants contend that plaintiff underwent three consultant gastroenterologists, one at FCI Talladega and two while at FCI Edgefield who both performed specialized diagnostic procedures. Defendants assert that the final recommendations have been pharmacotherapy and lifestyle changes, including avoidance of certain mediation and foods which have been discussed with plaintiff by the medical staff.   Defendants point out that a review of the medical records does not indicate a special diet was ever recommended by any FCI Edgefield medial staff or contract specialist in regards to treating his GERD. Defendants assert that the medical records do reveal that plaintiff was advised several times to cut down on spicy foods, especially at night but a review of plaintiff's commissary receipts reveal he has constantly purchased spicy food and other junk food which is inconsistent with a person who feels he should be on a special medical diet. (Declaration of Dr. Jose Serrano and Michael Pettit). Further, defendants contend that the Food Service Department provides healthy alternatives through the mainline selection for all inmates who eat in the institution cafeteria including

9

a salad bar and hot bar.(Defendants' exhibit 42, Declaration of Alvin Young). Defendants state that menu alternatives are provided on the cycle menu which is displayed in all the housing units as well as on the food service electronic menu board in the dining facility and are annotated with a @ to identify heart and healthy selections.

As to plaintiff's claims that medical staff did not make available his medical record for the consultant Specialist, defendants argue that plaintiff filed an administrative remedy with the Warden at FCI and an investigation revealed that after ongoing complaints of stomach problems, plaintiff was referred for a consultation with the Gastroenterologist Specialist who examined plaintiff three times at the institution and two times at the outside community hospital. Defendants assert that the Specialist, like all specialists who come to the institution to examine inmates, would have full access to plaintiff's medical records for review. (Declaration of Dr. Serrano, defendants exhibit 2). Defendants assert that surgery was never recommended by the Specialist for plaintiff. (Defendants' exhibit 2, 3, and 32). Defendants assert that plaintiff's medical records reveal he consented to have two EGD procedures recommended by the Specialist while he was incarcerated at FCI Edgefield on May 28, 2004, and March 11, 2004. (Exhibits 7 and 8). Defendants argue that the consent forms showed the EGD procedure was explained to him by the outside Specialist and if plaintiff did not want to have either of the two EGD procedures, he did not have to consent to have such procedures.

Defendants assert that the medical records reveal that the medications recommended by the Gastroenterologist Specialist were prescribed by either defendant Serrano, the Staff Physician, or a Mid-Level Practioner. (Declaration of Dr. Jose Serrano and plaintiff's medical records, defendants exhibit 2 and 3). Defendants assert that the Specialist can only make a recommendation for a prescription for a particular medicine which has to be reviewed by defendant Serrano, the Staff

10

Physician, or a Mid-Level Practioner who would decide whether or not to prescribe the same medication. Defendants argue that there is no documentation in the medical records that reveal defendant Fuertes-Rosario refused to give plaintiff his medicine.

As to plaintiff's allegations that defendants Guevara and Mattson denied him medical treatment after he signed up for sick call on several occasions, defendants argue that such claims cannot be substantiated by any evidence. Defendants assert that plaintiff was one of 2290 inmates incarcerated at FCI Edgefield. (Defendants' exhibit 9, declaration of Tami Rippon). Thus, if an inmate missed his scheduled appointment or runs late to such appointment, such appointment is rescheduled in order to keep the medical staff from running behind on their other scheduled appointments. Defendants contend that a review of the medical records reveal that plaintiff failed to show up for several scheduled appointments which were rescheduled. Defendants assert that there is no evidence that plaintiff was singled out by defendant Guevara or Mattson and denied medical treatment. Defendants state "since Mr. Richmond arrived at FCI Edgefield on October 25, 2001, his medical needs have been addressed by medical staff approximately 80 times." (Defendants' memo. P. 41). Further, defendants assert that three investigations have been conducted due to plaintiff's three Administrative Remedy requests alleging defendants Guevara and/or defendant Mattson denied him medical treatment or access to medical treatment which have all resulted in a finding of no merit to his allegations.

Plaintiff has alleged that defendant Serrano prescribed him the wrong medication and ordered an EKG which took over a month to be done all of which he alleges could have put his life in danger. Plaintiff alleges that he could have overdosed on the wrong medication or lost his life if the EKG had not been done. However, defendants assert that the medical records reveal that on October 9, 2003,

defendant Serrano prescribed Zantac and Aciphex for plaintiff's acid reflux and on November 20, 2003, plaintiff went to medical complaining that the Zantac was making his heart beat increase. Dr. Serrano advised the Mid-Level Practioner to remind plaintiff that the medication had been recommended by the Specialist and he had been on them for several months but to discontinue the Zantac. Less than two months later, plaintiff complained that the other acid reflux medicine was causing him to be dizzy and his heart rate to increase so he requested to be placed back on Zantac. (Defendants' exhibit 2, declaration of Dr. Jose Serrano, and exhibit 3, excerpts of plaintiff's medical record). On October 3, 2003, Dr. Serrano ordered a routine EKG on plaintiff since plaintiff was over 50 years old and fell within the normal group (50 years or older) wherein defendant Serrano orders routine EKGs as part of his work up for a baseline study. Dr. Serrano states that the EKG was not ordered for plaintiff based on any abnormal findings and there was no medical documentation which indicated it needed to be done as soon as possible. Thus, defendants assert that plaintiff's name was placed on the general waiting list as was done in a timely fashion (approximately one month later) in keeping with the medical schedule required to accommodate 2290 inmates.

In his response in opposition, plaintiff argues that "defendants have had 133 attempts to correct plaintiff's medical condition but have failed to correct the pain and suffering which continues on a day to day existence at FCI Edgefield, South Carolina." (Response p. 2). Plaintiff asserts that defendants do not give the exact medicine prescribed but gives generic forms which impair the healing process and does so to save money rather than be concerned about health. Further, plaintiff argues that "this court should realize that defendants in their failure to properly correct plaintiffs hernia and gastroesophageal reflux disease(GERD) or acid reflux disease . . . medicating plaintiff with various forms of Zantac/Mylanta, etc., instead of properly treating the obvious problem, again, it was

12

not "cost effective' to operate on plaintiff, this is the only feasible explanation for the deliberately

indifferen[ce] shown by defendants." (Response p. 3). Plaintiff alleges that he is forced to eat a

greasy carbohydrate diet which aggravates his condition and that medical personnel have bee

indifferent to his medical needs.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth

Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of

pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The Court stated:

> An inmate must rely on prison authorities to treat his medical
> needs; if the authorities fail to do so, those needs will not be
> met. . . . We therefore conclude that deliberate indifference to
> serious medical needs of a prisoner constitutes the
> "unnecessary and wanton infliction of pain," Gregg v. Georgia,
> supra, at 173, (joint opinion), proscribed by the Eighth
> Amendment. This is true whether the indifference is
> manifested by prison doctors in their response to the prisoner's
> needs or by prison guards in intentionally denying or delaying
> access to medical care or intentionally interfering with the
> treatment once prescribed. Regardless of how evidenced,
> deliberate indifference to a prisoner's serious illness or injury
> states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional,

the court was careful to note, however, that "an inadvertent failure to provide adequate medical care"

does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not
> state a valid claim of medical mistreatment under the
> Eighth Amendment. Medical malpractice does not
> become a constitutional violation merely because the
> victim is a prisoner. In order to state a cognizable
> claim, a prisoner must allege acts or omissions

> sufficiently harmful to evidence deliberate indifference
> to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)). Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344,

14

345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.     "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan.

1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against defendants for causing him to undergo a procedure with the Specialist that he had already had once before, for not prescribing the correct medication, for the delay of his EKG, for not providing a healthy diet, and for denying him medical treatment. Although plaintiff did not agree with the type of treatment he received, the fact is plaintiff was provided treatment and medication was prescribed for his acid reflux. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983. As this claim is asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. See Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In addition, plaintiff has failed to identify any medical expert or provide expert testimony regarding the standard of care, defendants' failure to conform to the standard, or the issue of proximate cause. Clearly, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. Plaintiff received more than fifty examinations and/or treatments for his complaints including to EGD procedures by a Gastroenterologist which plaintiff consented to have performed. Plaintiff failed to show for several appointments which were rescheduled. (Defendants' exhibit 2 and 3). Clearly, defendants were not indifferent to his medical needs. Additionally, the plaintiff has pointed to nothing in the medical record or filed any affidavits that indicate any lack of treatment caused him to suffer any serious or life threatening medical problems. Further, there is no evidence that he could have overdosed on the

16

medication he alleges was incorrectly prescribed or that he could have died without the EKG that took a month to receive. Plaintiff has not alleged any permanent damage or injury as a result of either allegation. Plaintiff is complaining about things that "could have" happened. Further, plaintiff alleged that he was not given a special diet for his stomach problems but has not presented any evidence that a doctor prescribed a special diet. Defendants admit that they instructed plaintiff not to eat spicy foods but he continued to purchase junk food from the commissary. (See defendants' exhibit 41 showing purchases of greasy and spicy snack foods from the commissary). Further, defendants submitted a declaration from Alvin Young , the Food Services Administrator at FCI Edgefield who states that inmates are offered choices on the menus noting heart and healthy selections. Further, Young states that in addition to the foods offered during mainline, an open salad bar and hot bar are available to inmates during the noon and evening meals.

As plaintiff has failed to show medical indifference, the claims against these defendants should be dismissed. Furthermore, the doctrine of respondeat superior cannot form the basis of a claim for violations of a constitutional right in any Bivens action. Rizzo v. Goode, 423 US. 362 (1976).  Liability may not be imposed on an individual in a Bivens action without a showing of that individual's personal responsibility for the constitutional violation. Dewalt v. Carter, 224 F.3d 607 (7th Cir.2000); Bentley v. Beck, 625 F.2d 70 (5th Cir.1980). Only federal officials who actually participated in the alleged unconstitutional behavior are appropriate parties in a Bivens suit. Id. Hence, a federal official cannot be held vicariously liable for the acts of his/her subordinates under the doctrine of "respondeat superior." See Rizzo v. Goode,, supra;  Ward v. Johnson, 667 F.2d 1126 (4th Cir.1981). Thus, defendant Fuertes-Rosario, as the HSA at FCI Edgefield, is in an administrative position that does not entail providing actual treatment to any inmate (defendants'

17

exhibit 38, declaration of Luisa Fuertes-Rosario) and plaintiff has failed to provide evidenced of any direct involvement in any of his allegations.

Based on the above, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Thus, the undersigned recommends that defendants' motion for summary judgment be granted as it relates to the plaintiff's claims of medical indifference.

### E.  QUALIFIED IMMUNITY

Defendants also contend that to the extent plaintiff seeks to proceed against the defendants in their individual capacities, the defendants are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendants argue that the acts complained of by plaintiff are discretionary acts which are protected by the doctrine of qualified immunity as each defendant was acting in his/her capacity as a federal executive officer and employee at all times relevant to this suit.

Immunity rules, both qualified and absolute, developed for § 1983 actions, apply to Bivens suits. Butz v. Economou, 438 U.S. 478, 500-01 (1978).

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

19

### III.  CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that the defendants' motion for summary judgment (document # 10) be GRANTED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 22, 2005
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
